**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **INTERNATIONAL PROFIT ASSOCIATES,** ) | |
| **INC.,** an Illinois Corporation, ) | |
| ) | |
| Plaintiff, ) | No. 06 C 6154 |
| ) | |
| v. ) | |
| ) | |
| **ROBERT PAISOLA** (a/k/a Robert H. ) | |
| Paisola, Jared Rob Deheart and ) | |
| Robert Deheart), Individually, et ) | |
| al., and **ROBERT PAISOLA, TRADING AS** ) | |
| **WESTERN CAPITAL FINANCIAL SERVICES,** ) | |
| **INC.** (a/k/a The Western Capital ) | |
| Financial Group and/or The Western ) | |
| Capital Family of Companies). ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff International Profit Associates ("IPA") has brought a multi-count complaint against defendant Robert Paisola ("Paisola"), both individually and trading as Western Capital Financial Services, Inc. ("Western Capital") (collectively "defendants"), bringing claims for extortion; violation of the Federal Racketeering and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. (2006) ("RICO"); violation of the Illinois state statute prohibiting eavesdropping, 720 ILL. COMP. STAT. ANN. 5/14-1, et seq.; civil conspiracy; defamation; tortious interference with contract; tortious interference with prospective economic gain, conspiracy to injure in trade, business and reputation; violation of the Lanham Act, 15 U.S.C. § 1114; "cyberpiracy" under 15 U.S.C. § 1125(d); and violation of the Illinois Deceptive Trade Practices

Act, 815 ILL. COMP. STAT. ANN. 510/2. IPA has now brought a motion for a temporary restraining order ("TRO") against defendants, prohibiting them from communicating with IPA's present and past officers and employers, using certain websites, possessing computers with online computer service, conducting internet advertising, publishing press releases about IPA, and using IPA's trademarks. I have heard IPA's arguments in support of its proposed TRO. IPA also presented an affidavit from its counsel stating that IPA has been unable to give defendants notice because it is unsure of Paisola's location, and because Western Capital is an unincorporated company. I grant IPA's motion for a TRO, but issue a more limited TRO than the one IPA seeks.

## I. Background

In support of its motion for a temporary restraining order, IPA established the following: IPA is an Illinois corporation that provides business consulting services to other corporations. IPA has logos and trademarks associated with its business. IPA also maintains the website www.ipaopinions.com.

Somehow, some of IPA's "disputes" with former customers came to the attention of Paisola and the company with which he is associated, Western Capital. Paisola subsequently began publishing allegations and information about IPA on two websites that Paisola operates, www.collectionindustrylive.com and www.ipaopinion.com. Paisola also made telephone calls to certain IPA employees and

agents, and, without their knowledge or consent, taped those calls and made transcripts and recordings available on his websites. Paisola also included logos, trademarks, and copyrighted material of IPA on his websites. Further, Paisola has published false or misleading information about IPA on his websites, including the insinuation that IPA offered him ten million dollars to resolve his complaints against it, and the insinuation that IPA offered to allow Paisola to take part in the governance of IPA. In addition, IPA has presented information that Paisola has used IPA's trademarked term "International Profit Associates" as part of the text of an advertisement through Google's "Adwords" program[1] so that Google users searching on Google's website for "International Profit Associates" see Paisola's website at the top of their search results.

IPA has further shown that Paisola purports to represent a former customer of IPA with whom IPA has a collection dispute.

---

[1]Google offers a service in which its customers may arrange for their advertisements to appear on Google's website in response to a user's search query (for example, a user of Google's website who enters a search for "books" might receive search results that include advertisements for booksellers). Google calls its advertising program "Adwords." Google's customers may select certain search terms that, if entered by a user, will return search results that include a section at the beginning of the user's search results titled "Sponsored Links." The "Sponsored Links" section lists the customer's website and a limited amount of advertising text. A search on Google's website using the search term "international profit associates" returns a list of search terms as well as three results in the "Sponsored Links" section. The third "sponsored link" includes the text "National Profit Ripoff" and directs the user to the website www.ipaopinion.com.

3

Paisola has made escalating demands to IPA employees and agents to settle this dispute, beginning with an offer of $56,000 to resolve the matter, then raising his demand to $112,000. After IPA did not agree to these demands, Paisola began publishing on his websites some personal information about IPA management, including their home addresses.

IPA has provided affidavits asserting that as a result of Paisola's actions, the managing director of IPA, John Burgess, fears for his safety and the safety of his family; that other IPA employees have also feared for their safety; and that IPA has suffered "incalculable damages on a daily basis to its good name and reputation, has lost employees and potential employees, and has lost business with current and potential clients."

IPA's complaint in this matter followed.

## II. Legal Standard

To obtain its desired temporary restraining order, IPA must show that (1) it is reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest. See Joelner v. Vill. of Washington Park, Illinois, 378 F.3d 613, 619 (7th Cir. 2004); Long v. Bd. of Educ., Dist. 128, 167 F. Supp. 2d. 988, 990 (N.D. Ill. 2001) ("The standards for issuing temporary restraining

orders are identical to the standards for preliminary injunctions."). IPA has the burden of proof to make a clear showing that it is entitled to the relief it seeks. See Goodman v. Illinois Dep't of Fin. and Prof'l Regulation, 430 F.3d 432, 437 (7th Cir. 2005) (internal citations omitted).

In order to receive a temporary restraining order without providing notice to the defendants, IPA must show that irreparable injury will result "before the adverse party or that party's attorney can be heard in opposition," and must certify in writing "the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required." F ED. R. CIV. P. 65(b). Here, IPA appeared in court without giving notice to defendants of its motion. [2] Although it initially contended that it need not give Paisola notice because that "would allow Paisola additional time to continue to cause immediate and irreparable injury in his racketeering and extortion plot against [IPA]," IPA's attorney has now clarified that although IPA's investigator briefly located Paisola in Utah on Friday, November 10, 2006, the investigator has not been able to locate him since, and therefore IPA has not had an opportunity to give Paisola

---

[2]IPA contends, and there appears evidence to support, that Western Capital is not an incorporated company and therefore cannot be noticed (although in its complaint IPA provides an address that it alleges is Western Capital's principal place of business). Furthermore, it appears that Western Capital is entirely in the control of Paisola, so Paisola is likely the only real party at interest in this litigation.

notice. Because IPA has represented that it has not been able to provide Paisola notice, I will grant IPA an ex parte TRO. See Am. Can Co. v. Mansukhani, 742 F.2d 314, 321 (7th Cir. 1984) (finding that the district court erred in granting an ex parte temporary restraining order because "there was no valid reason for proceeding ex parte").

III. Reasonable Likelihood of Success on the Merits

To show a reasonable likelihood of success on the merits, IPA need only show "some likelihood of success" and that its "chances are better than negligible." See Somerset House, Inc. v. Turnock, 900 F.2d 1012, 1015 (7th Cir. 1990) (internal citations omitted). Here, IPA has made this showing at least with respect to some of its claims. However, IPA's memorandum in support of its motion is scant in its argument that it has shown a likelihood of success; it simply contends that "there can be little doubt that IPA will prevail on some, if not all, of its causes of actions" without setting forth the elements of each of these claims and showing how IPA would meet each of those elements. This court will not do IPA's work for it and analyze the law governing each of IPA's claims, but does find that IPA has shown a likelihood of success on at least some of its claims.

a. IPA's claims under the Lanham Act

IPA's key claim against Paisola is that Paisola is violating the Lanham Act by incorporating IPA's trademarks into the search

6

terms used to lead people to his website, by using those trademarks in the domain name of one of his websites, and by using IPA's trademarks in the content of his websites. To show that it has a reasonable likelihood of success on its Lanham Act claim that defendants' domain name is confusingly similar to its trademarks, IPA must show that it has trademarks protected by the Lanham Act and that the defendants' domain name is likely to cause confusion among consumers. See Barbecue Marx, Inc. v. 551 Ogden, Inc., 235 F.3d 1041, 1043 (7th Cir. 2000). Similarly, to show a likelihood of success on its claim that defendants are using its trademarked terms, IPA must show that it has registered its marks, the defendants used the marks without its consent, and that the unauthorized use is likely to confuse consumers or deceive the public. See 15 U.S.C. § 1114(a). Here, IPA has made such a showing. It has established through affidavits and attached materials that defendants are using terms trademarked by IPA as search terms in Google's Adwords program in a manner likely to cause confusion,[3] and that Paisola has established a domain name for one of his websites, www.ipaopinion.com, that is confusingly

---

[3]The law in the Seventh Circuit is silent on whether the use of a trademark as a keyword in an online search program such as Google's Adwords is a use "in commerce" under the Lanham Act as required to establish a claim, but other courts have determined that purchasing a trademarked term as a "keyword" for Google Adwords program meets the Lanham Act's use requirement. See Buying for the Home, LLC v. Humble Abode, LLC, No. 03-cv-2783, 2006 WL 3000459, at *7-8 (D. N.J. Oct. 20, 2006) (collecting cases).

7

similar to IPA's trademark. See, e.g., Morrison & Foerster LLP v. Wick, 94 F. Supp.2d 1125, 1130 (D. Colo. 2000) (finding, where law firm had trademarked name "Morrison & Foerster" and had established website www.mofo.com, websites such as www.morrisonfoerster.com and www.morrisonandfoerster.com were identical or confusingly similar to law firm's mark).[4]  Therefore, IPA has established a likelihood of success on its Lanham Act claim.

## b. IPA's "cyberpiracy" claim

Relatedly, IPA has also shown a likelihood of success on its "cyberpiracy" or "cybersquatting" claim.[5]  Under 15 U.S.C. § 1125(d), a party commits cybersquatting when (1) defendants have registered, trafficked in, or used a domain name; (2) the domain name is identical to or confusingly similar to marks owned by plaintiff; (3) the marks were distinctive at the time of defendants' registration of the domain name; and (4) defendants have committed the acts with a bad faith intent to profit from plaintiff's marks.  See Rosati's Franchise Sys., Inc. v. Rosati,

---

[4]IPA makes much of the fact that defendants' website www.ipaopinion.com is substantially similar to its website www.ipaopinions.com, but as the court noted in Brookfield Communications., Inc. v. West Coast Entertm't Corp., 174 F.3d 1036 (9th Cir. 1999), this does not matter since the important confusion for Lanham Act purposes is confusion with a trademarked term (here, "IPA" and not "ipaopinions.com."  See id. at 1055.  IPA does not allege that it has trademarked "ipaopinions."  This similarity is relevant only for IPA's "cyberpiracy" claim.

[5]Although IPA refers to this claim as a "cyberpiracy" claim, courts addressing 15 U.S.C. § 1125(d) have referred to this section as a "cybersquatting" provision.

No. 05 C 3146, 2006 WL 163145, at *5 (N.D. Ill. Jan. 17, 2006)(citing 15 U.S.C. § 1125(d)(1)). "Bad faith intent . . . shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." Id. (citing 15 U.S.C. § 1125(d)(1)(B)(ii)). Here, IPA has shown that defendants registered www.ipaopinions.com after IPA established its own website, www.ipaopinion.com, and has sufficiently shown that defendants did this with the intent to profit from the confusion. Defendants may ultimately be able to show that they did not act in bad faith, but IPA has established a reasonable likelihood that this is the case.

    c.  IPA's claim under the Illinois eavesdropping statute

    IPA has also established a likelihood of success of its claim under the Illinois eavesdropping statute. A person commits eavesdropping under the statute when he, without some law enforcement justification, "[k]nowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation . . . unless he does so . . . with the consent of all of the parties to such conversation." 720 ILL. COMP. STAT. ANN. 5/14-2(a).[6]  IPA has shown that Paisola has taped

_____

    [6]This statute was amended in 1994 after the Illinois Supreme Courts' decision in People v. Harrington, 163 Ill.2d 507, 206 Ill. Dec. 705, 645 N.E.2d 957 (1994) that there is no violation of the statute where a conversation is recorded by one party to the conversation. Although the Supreme Court has not ruled on the

conversations with IPA agents and employees without their consent and has published those tapes on his website.[7]

### d. IPA's defamation claim

Finally, IPA has shown a likelihood of success on at least a portion of its defamation claim. To establish a claim for defamation under Illinois law, IPA must show that the defendants made a false statement about it, the defendants made an unprivileged publication to a third party, and the publication of the statement damaged IPA. See Ptasznik v. St. Joseph Hosp., 464 F.3d 691, 698 (7th Cir. 2006) (citing Popko v. Cont'l Cas. Co., 355 Ill. App.3d 257, 261, 291 Ill. Dec. 174, 178, 823 N.E.2d 184, 188 (Ill. App. Ct. 2005)). Here, although IPA alleges that many statements that defendants made about IPA and published on their websites were false, IPA has only provided affidavits demonstrating that certain of those statements were false (although ultimately IPA may well be able to show that many others were false as well). IPA has at least shown that defendants insinuated that IPA offered Paisola ten million dollars to resolve his complaints, and

---

efficacy of this updated statute, there are no cases rejecting the statute's clear language that a party commits eavesdropping when all parties to a conversation have not consented to its recording.

[7]Under Illinois law, when communications with individuals acting as agents or representatives of a company are taped in violation of the Illinois eavesdropping statute, claims under the eavesdropping statute belong to the company. See McDonald's Corp. v. Levine, 108 Ill. App.3d 732, 743, 64 Ill. Dec. 224, 232, 439 N.E.2d 475, 483 (Ill. App. Ct. 1983).

10

insinuated that IPA offered to allow Paisola to take part in the governance of IPA. IPA has also shown a likelihood that the publication of this false statement damaged it.

### e. IPA's other claims

IPA has brought other claims against defendants, including claims under RICO; civil conspiracy; tortious interference with contract; tortious interference with prospective economic gain; conspiracy to injure in trade, business and reputation; extortion; and violation of the Illinois Deceptive Trade Practices Act. IPA has not presented specific argument about how it has a likelihood of success on these claims, instead only generally arguing that it has shown a likelihood of success on its claims generally, and it has not attempted to set forth specific facts in support of these claims.[8] Therefore, I cannot base a TRO on the likelihood of success of any of these claims.

### IV. Adequacy of Remedy at Law/Irreparable Harm

IPA must also show that it has no adequate remedy at law and that it would suffer irreparable harm that would outweigh any irreparable harm to defendants if the TRO were granted. IPA has shown that Paisola's infringement of its trademarks will lead to

---

[8]IPA does repeatedly contend that Paisola is extorting it by demanding money in exchange for ceasing his complaints and action against IPA. However, IPA has not articulated under what theory of extortion it is proceeding. IPA cannot simply cry "extortion" without setting forth an argument, both legal and factual, in support of its claim.

incalculable loss of its reputation with its customers. As other courts have noted with respect to claims for trademark infringement under the Lanham Act, because it is difficult to assess damages associated with loss of goodwill, such damages are considered to have no adequate remedy at law, and to be irreparable. See, e.g., Promatek Indus., Ltd. v. Equitrac Corp., 300 F.3d 808, 813 (7th Cir. 2002); Gateway Eastern Ry. Co. v. Terminal R.R. Ass'n of St. Louis, 35 F.3d 1134, 1140 (7th Cir. 1994). The same is true for Paisola's claim for cybersquatting, since this claims raise the same problem of quantifying damages. I further find, with respect to IPA's trademark claims, that the irreparable harm that IPA will suffer if this injunction is not granted far outweighs any harm that defendants will suffer, since defendants are free to engage in speech concerning IPA in other lawful ways without cybersquatting or using IPA's trademarks. And, I find that an injunction on IPA's trademark claims will not harm the public interest.

I am not convinced that an injunction is appropriate for IPA's defamation claims, except for IPA's demonstration that defendants include false information on their website purporting to show that IPA offered to settle with it and to allow Paisola to participate in the management of the company. As the Supreme Court has noted, "Subsequent civil or criminal proceedings, rather than prior restraints, ordinarily are the appropriate sanction for calculated defamation or other misdeeds in the First Amendment context." CBS,

Inc. v. Davis, 510 U.S. 1315, 1318 (1994) (Justice Blackmun, acting as Circuit Justice, staying preliminary injunction temporarily preventing broadcaster from broadcasting footage purportedly filmed while broadcaster was trespassing on company's property); see also Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976) ("The thread running through all these cases is that prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights. A criminal penalty or a judgment in a defamation case is subject to the whole panoply of protections afforded by deferring the impact of the judgment until all avenues of appellate review have been exhausted. Only after judgment has become final, correct or otherwise, does the law's sanction become fully operative."). IPA nevertheless contends, citing Huskey v. Nat'l Broad. Co, Inc., 632 F. Supp. 1282 (N.D. Ill. 1986), that injunctive relief is appropriate to prevent against defendants' "smear campaign" against plaintiff. In Huskey, the district court held that injunctive relief to prevent a private harm (in that case, broadcasting footage of a prisoner that invaded his privacy) was not necessarily improper. Id. at 1295. Importantly, the court stated that its denial of defendant's motion to dismiss the plaintiff's prayer for injunctive relief "should not be misunderstood as a decision confirming the actual availability of injunctive relief here." Id. at 1296.

Here, while an outright ban prohibiting defendants from

engaging in certain speech is unwarranted and potentially a prior restraint on speech, it does not violate the principles of the First Amendment to enjoin defendants from continuing to include certain information on their website that is, on the record before the Court, demonstrably false and defamatory, and that IPA has shown will cause it irreparable harm and against which it has no adequate remedy at law. I find that the only instance of defamation against which defendants may be enjoined at this stage of the litigation is defendants' false representation that IPA offered to settle with Paisola, and that as part of this settlement IPA agreed to pay Paisola and to allow Paisola to participate in the management of the company. I do find that IPA has no adequate legal remedy as to this demonstrated defamation, and that the damages of this defamation, including reputational losses and potential confusion by its customers and employees, are incalculable such that IPA has no adequate legal remedy. I further find that a TRO prohibiting defendants from continuing to publish this false statement is not against the public interest, and that any incidental harm to defendants in prohibiting further publication would be far outweighed by the damage to IPA of its continued publication.

I cannot conclude that a TRO is appropriate on IPA's eavesdropping statute claim. Because the Illinois eavesdropping statute provides for injunctive relief, see 720 ILL. COMP. STAT. ANN.

14

5/14-6(a), irreparable harm may be presumed. See Illinois Bell Telephone Co. v. Illinois Commerce Comm'n, 740 F.2d 544, 571 (7th Cir. 1984) (irreparable harm may be presumed where claim brought under federal statute providing for injunctive relief). However, IPA must still show that any legal remedy it could ultimately obtain would be inadequate. See Roland Mach. Co. v. Dresser Indus., 749 F.2d 380, 386 (7th Cir. 1984). I find that IPA has not shown that damages would not compensate it for any eavesdropping in which IPA is engaging. Although IPA understandably does not want conversations with its employees and agents recorded and made public, and without condoning defendants' apparent disregard for the law concerning eavesdropping, IPA has not shown, or even directly argued, that damages for this eavesdropping cannot be calculated. This is particularly true where the conversations are of a business nature and do not reveal anything personal about the participants themselves, or anything of a private or confidential nature concerning IPA. While IPA ultimately may be entitled to injunctive relief prohibiting defendants from engaging in further eavesdropping, IPA has not shown that the legal remedies to which it is also entitled would not be adequate.

V.  Scope of Temporary Restraining Order

Having concluded that IPA is entitled to a temporary restraining order on its Lanham Act and cybersquatting claims, and to a limited extent on its defamation claim, I must now determine

15

the proper scope of such a TRO. IPA has sought a TRO that is inappropriately broad; it asks me to temporarily enjoin defendants from such activities such as communicating with IPA's present and past officers and employees, making any statements "concerning or related to IPA, its officers, and its employees," using computers with access to any online computer services, possessing data encryption techniques or programs, and publishing any information about IPA. There is no basis for affording IPA any of this extraordinary relief. However, IPA is entitled to some relief.

Therefore, I hereby order defendants to (1) cease making content available on the internet through the domain name www.ipaopinion.com; (2) cease conducting further advertising using terms trademarked by IPA, including the terms "International Profit Associates," "IPA" or "IBA"; (3) cease using terms trademarked by IPA, including the terms "International Profit Associates," "IPA" or "IBA", as keywords for any internet advertising service, including services run by Google or Yahoo; and (4) remove from their websites any false assertions that IPA or anyone associated with IPA has offered to settle with defendants or has offered to allow defendants to participate in the management of IPA.

This TRO shall apply to the parties to this action as well as their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or

16

otherwise. This TRO shall expire ten days from the date of its entry. In addition, plaintiff shall be required to post a bond of $10,000 in order for this TRO to take effect.

ENTER ORDER:

Elaine E. Bucklo
United States District Judge

Dated: November 14, 2006